UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LANCE POISSON,<br><br>Petitioner,<br><br>v.<br><br>JAMIE CORRIGAN,<br><br>Respondent. | Case No. 26-cv-10579<br><br>Honorable Robert J. White |

**OPINION AND ORDER (1) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

## I. Introduction

Petitioner, Lance Poisson, incarcerated at the Chippewa Correctional Facility in Kincheloe, Michigan, filed a petition for writ of habeas corpus, through counsel, Timothy Austin Doman. (ECF No. 1). Petitioner challenges his conviction for first-degree criminal sexual conduct (CSC), Mich. Comp. Laws § 750.520b. For the reasons that follow, the petition for writ of habeas corpus is DENIED.

## II. Background

Petitioner was convicted following a jury trial in the Livingston County Circuit Court. This Court recites verbatim the relevant facts relied upon by the

Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016):

> Defendant was charged with, and convicted of, one count of CSC-I on the basis of an incident during which he placed his penis in the mouth of his then-wife's son, AB,[1] who was approximately five years old at the time. AB testified regarding the incident at trial. Significantly to this appeal, defendant was interviewed by Livingston County Sheriff's Office Detective Curt Novara, following which defendant agreed to take a polygraph examination. An independent special agent from the Federal Bureau of Investigation (FBI), Bradford Beyer, conducted that examination.
>
> At the outset of the examination, Beyer provided defendant with a written statement of his *Miranda* rights. Defendant indicated that he understood his rights, both verbally and by signing the advice of rights form acknowledging his understanding. Defendant was also provided a separate explanation and advice of rights form specifically regarding the polygraph examination. He signed this form, indicating that he understood those rights and voluntarily consented to the polygraph examination. Beyer explained to defendant that the test was voluntary and that defendant could leave at any time.
>
> Following the actual polygraph examination, Beyer continued by indicating his belief that defendant had committed the charged offense and then discussing religious matters with defendant. According to Beyer's testimony, he and defendant discussed their shared Christian faith, the power of forgiveness, and getting help for the victim. Defendant then confessed that the allegations were true and made incriminating statements. Those statements were admitted into evidence at trial without objection to their admissibility.

---

[1] Because the victim was a minor at the time of the offense, the Court will refer to him by his initials only as the Michigan Court of Appeals did to preserve his privacy. See Fed. R. Civ. P. 5.2(a).

*People v. Poisson*, No. 362924, 2024 WL 1826318, at *1-2 (Mich. Ct. App. Apr. 25, 2024) (footnotes omitted), *lv. den*. 13 N.W.3d 310 (2024).

Petitioner seeks a writ of habeas corpus on the following grounds: (1) Petitioner should have been given a fresh set of *Miranda* warnings after he failed the polygraph examination, (2) Petitioner's post-polygraph statement was involuntary because the detective appealed to Petitioner's Christian faith and the power of forgiveness, and (3) counsel was ineffective for failing to move to suppress Petitioner's confession because it was involuntary and taken in violation of *Miranda*.

III. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.,* at 103.

The Michigan Court of Appeals reviewed and rejected Petitioner's claims involving the admissibility of his confession under a plain error standard because Petitioner failed to preserve the issues as a constitutional claim at the trial court level. The AEDPA deference applies to any underlying plain-error analysis of a

procedurally defaulted claim. *See Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).[2]

IV. Analysis

The Court discusses Petitioner's claims together because they are interrelated. Petitioner claims that his post-polygraph statement should have been suppressed because Detective Beyer failed to administer a fresh set of *Miranda* warnings before questioning Petitioner. Petitioner also argues that his confession was involuntary because Detective Beyer appealed to his religious beliefs to get him to confess. In the alternative, Petitioner argues that counsel was ineffective for failing to move for the suppression of his confession on these grounds.

Petitioner contends that his post-polygraph confession should have been suppressed because: (1) he was not given a second set of *Miranda* warnings prior to being interrogated after failing the polygraph examination and (2) his statement was involuntary because the detective appealed to his religious beliefs as a Christian to obtain the confession.

---

[2] Respondent argues that these claims are procedurally defaulted because of Petitioner's failure to object at trial or move to suppress the statement. Petitioner claims that his trial counsel was ineffective for failing to object or move for the confession to be suppressed. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of Petitioner's defaulted claims, it would be easier to consider the merits of the claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

A prosecutor may not use a defendant's statements which stem from custodial interrogation unless the prosecutor can demonstrate the use of procedural safeguards which are effective to secure a defendant's privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Unless other means are devised to inform a suspect of his right to silence and a "continuous opportunity to exercise it," the following warnings are required to be given to a suspect:

> 1. the person must be warned that he or she has a right to remain silent;
> 2. that any statement he does make may be used against him; and
> 3. that he has a right to the presence of an attorney, either appointed or retained.

*Miranda*, 384 U.S. at 444.

The Fifth Amendment prohibits the prosecution's use of a criminal defendant's compelled testimony. *Oregon v. Elstad*, 470 U.S. 298, 306-07 (1985). The Due Process Clause of the Fourteenth Amendment likewise prohibits the admission at trial of coerced confessions obtained by means "so offensive to a civilized system of justice that they must be condemned." *Miller v. Fenton*, 474 U.S. 104, 109 (1985). An admission is deemed to be coerced when the conduct of law enforcement officials is such as to overbear the accused's will to resist. *Ledbetter v. Edwards,* 35 F.3d 1062, 1067 (6th Cir. 1994) (citing *Beckwith v. United States*, 425 U.S. 341, 347-48 (1976)). An involuntary confession may result from psychological, no less than physical, coercion or pressure by the police. *Arizona v. Fulminante*, 499 U.S. 279, 285-89 (1991).

A defendant's waiver of his *Miranda* rights is considered valid if it is voluntary, knowing, and intelligent. *Miranda v. Arizona*, 384 U.S. at 444, 475. Coercive police activity is a necessary predicate to finding that a defendant's waiver of his *Miranda* rights was involuntary. *Colorado v. Connelly,* 479 U.S. 157, 167, 169-70 (1986). A defendant's deficient mental condition, by itself, is insufficient to render a waiver involuntary. *Id.* at 164-65. "[W]hile mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry." *Connelly*, 479 U.S. at 165.

Likewise, in determining whether a confession is voluntary, the pertinent question for a court is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton,* 474 U.S. at 112. These circumstances include:

1. police coercion (a "crucial element");
2. the length of interrogation;
3. the location of interrogation;
4. the continuity of the interrogation;
5. the suspect's maturity;
6. the suspect's education;
7. the suspect's physical condition and mental health;
8. and whether the suspect was advised of his or her *Miranda* Rights.

*Withrow v. Williams*, 507 U.S. 680, 693-94 (1993).

All of the factors involved in a defendant making a statement to the police should be closely scrutinized. *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). However, a confession should not be deemed involuntary in the absence of coercive police activity. *Colorado v. Connelly,* 479 U.S. at 167.

The Michigan Court of Appeals concluded that under the totality of the circumstances, Petitioner failed to show that his confession was involuntary:

> Here, with respect to the *Cipriano*[3] factors, the record indicates that defendant was more than 30 years old, had graduated high school, and had attended one year of post-secondary school. Defendant was informed of his constitutional rights pursuant to *Miranda*, and he indicated that he understood and waived those rights. The entire interaction, including the pretest, the polygraph examination, and the posttest interrogation lasted less than three hours. The discussion of which defendant now complains, involving matters of religion and forgiveness, only lasted approximately 10 minutes according to Beyer's testimony. The door to the room in the sheriff's office where the interview occurred was unlocked, and Beyer informed defendant that he was free to leave at any time. There is no evidence that defendant was injured, intoxicated, or in ill health, and defendant was not deprived of food, sleep, water, or medical attention. There is also no evidence that he was physically abused or threatened.

*People v. Poisson*, 2024 WL 1826318, at *4.

The Michigan Court of Appeals further concluded that it was unnecessary for Detective Beyer to readvise Petitioner of his *Miranda* rights after Petitioner flunked the polygraph, because the totality of the circumstances demonstrated that Petitioner

[3] *People v Cipriano*, 431 Mich. 315, 333-34 (1988).

"was adequately apprised of his constitutional rights and gave a knowing and voluntary waiver." *Id.*, at *6.

Petitioner first argues that his confession should have been suppressed because Detective Beyer failed to readvise Petitioner of his *Miranda* warnings after he took the polygraph examination and before beginning his post-polygraph interview with Petitioner.

In *Wyrick v. Fields*, 459 U.S. 42 (1982), the United States Supreme Court held that a suspect did not need to be readvised of his *Miranda* rights, which he had waived in writing prior to the polygraph examination, at the conclusion of the polygraph and prior to the post-polygraph interview, because "the circumstances [had not] changed so seriously that his answers no longer were voluntary" and his waiver was still knowing and intelligent. 459 U.S. at 47-48. The Court reasoned, "it would have been unreasonable for Fields and his attorneys to assume that Fields would not be informed of the polygraph readings and asked to explain any unfavorable result." *Id*. at 47. The Supreme Court concluded that under the totality of the circumstances in *Wyrick,* it was unnecessary to readvise the defendant of his *Miranda* rights after the polygraph examination. *Id.* at 48. "Under *Fields*, additional [*Miranda*] warnings are only required if the circumstances seriously changed between the initial warnings and the interrogation." *Treesh v. Bagley*, 612 F.3d 424,

432 (6th Cir. 2010). Michigan law is in accord on this point. *See People v. Ray*, 431 Mich. 260, 275-77 (1988).

Petitioner's counsel acknowledges the holding in *Wyrick* but argues that Petitioner's case can be distinguished from the defendant's case in *Wyrick* because the circumstances had seriously changed between the initial warnings when Detective Beyer's originally friendly attitude became accusatory after Petitioner failed the polygraph examination.

In *United States v. Martinez*, 122 F.4th 389, 412 (10th Cir. 2024), the United States Court of Appeals for the Tenth Circuit rejected this very argument, concluding that the shift in tone and manner of questioning by the FBI Agent before and after the polygraph examination was not such a change of condition that would require the re-reading of *Miranda* rights to the defendant. The Tenth Circuit concluded that "in light of the other circumstances just discussed, it was not significant enough to cause Martinez to forget or misunderstand his initial rights. After all, it is unsurprising that a polygraph test would be conducted in a less accusatory manner than a subsequent post-polygraph interview." *Id.*

Petitioner also argues that his case is distinguishable from the defendant's case in *Wyrick* because that defendant had requested a polygraph examination and had retained and consulted with counsel prior to the examination. Petitioner also notes

that he was not specifically advised that there would be any post-examination questioning.

Several older circuit court cases have suggested that the fact that a defendant did not request the polygraph examination, had not consulted with counsel prior to the examination, and/or had not been advised of the possibility of any post-examination questioning might necessitate the defendant being informed a second time about his *Miranda* rights prior to any post-polygraph interrogation. *United States v. Johnson*, 816 F.2d 918, 922, n. 4 (3d Cir. 1987) ("Subsequent federal case law shows that among the most significant circumstances to be considered are whether the suspect has consulted with counsel, whether the suspect has requested the examination, and whether the waiver form initially presented to the suspect clearly indicates that post-examination questioning is a possibility."); *United States v. Gillyard*, 726 F.2d 1426, 1429-30 (9th Cir. 1984) (holding that district court properly concluded that the defendant should have been readvised of his *Miranda* rights prior to any post-polygraph questioning because unlike the defendant in *Wyrick* he was not represented by counsel and had not requested the polygraph).

The problem for Petitioner is that a habeas court can only rely on the holdings of the United States Supreme Court as they existed at the time of the relevant state court decision to determine whether that decision was contrary to, or an unreasonable application of, clearly established federal law. *Mitzel v. Tate,* 267 F.

3d 524, 530-31 (6th Cir. 2001). A habeas court cannot look to the decisions of this circuit, or other courts of appeals, when deciding whether a state court's decision was contrary to, or an unreasonable application of, clearly established federal law. *Id.* Circuit court precedent thus does not constitute "clearly established Federal law, as determined by the Supreme Court" and thus "cannot form the basis for habeas relief under [the] AEDPA." *Parker v. Matthews,* 567 U.S. 37, 48-49 (2012).

The question, instead, for this Court, was whether or not the Michigan Court of Appeals' determination that Detective Beyers was not required to readvise Petitioner of his *Miranda* rights prior to any post-polygraph examination was contrary to, or an unreasonable application of *Wyrick v. Fields*. *Treesh v. Bagley*, 612 F.3d at 432. In light of the totality of the circumstances surrounding the polygraph examination and the post-examination questioning in this case, this Court cannot conclude that the Michigan Court of Appeals' rejection of Petitioner's *Miranda* claim was unreasonable. In any event, even if Petitioner's claim that he should have been readvised of his *Miranda* rights represents a close call, this fact "militates against the conclusion" that the Michigan Court of Appeals' "application of the relevant [United States] Supreme Court precedent was objectively unreasonable." *Davis v. Lafler*, 658 F.3d 525, 535 (6th Cir. 2011) (quoting *Lopez v. Wilson*, 426 F.3d 339, 358 n. 1 (6th Cir. 2005) (en banc) (COLE, J., concurring) (internal quotation marks omitted).

Petitioner also contends that his confession was involuntary because Detective Beyers appealed to his Christian faith and the notion of forgiveness to get him to confess.

The Supreme Court rejected this very argument in *Berghuis v Thompkins*, 560 U.S. 370 (2010). The defendant in *Berghuis* was given *Miranda* warnings and questioned by two police officers for about 3 hours concerning a shooting that took place in Southfield, Michigan. *Id.* at 374-75. Approximately 2 hours and 45 minutes into the interrogation, the defendant was asked by one of the officers if he believed in God and if he prayed to God. *Id.* at 376. The defendant answered yes as his eyes filled with tears. *Id.* One of the officers then asked the defendant, "'Do you pray to God to forgive you for shooting that boy down?'" *Id.* The defendant again answered affirmatively. *Id.* The Supreme Court considered the totality of the factual circumstances surrounding the defendant's confession and determined that it was not coerced in spite of this appeal to the defendant's religion. *Id.* at 386-87. The Supreme Court held: "The fact that [the officer's] question referred to [the defendant's] religious beliefs also did not render [his] statement involuntary." *Id.* at 387. "[T]he Fifth Amendment privilege is not concerned with moral and psychological pressures to confess emanating from sources other than official coercion." *Id.* (internal quotations omitted). The Supreme Court has previously rejected similar arguments. *Colorado v. Connelly*, 479 U.S. at 170-71 ("Respondent's perception of coercion flowing from the 'voice of God,' however

important or significant such a perception may be in other disciplines, is a matter to which the United States Constitution does not speak.”).

In the present case, the totality of the circumstances demonstrate that Petitioner voluntarily agreed to speak with Detective Beyers. The detective’s brief appeal to Petitioner’s Christian religious beliefs and the notion of forgiveness did not render his confession involuntary. Under the deference required by the AEDPA, and given the factors supporting a finding that Petitioner’s confession was voluntary, the decision of the Michigan Court of Appeals in finding Petitioner’s confession to have been voluntary was a reasonable application of federal law. *See McCalvin v. Yukins,* 444 F.3d 713, 720 (6th Cir. 2006).

Petitioner also claims that counsel was ineffective for failing to move for the suppression of his confession.

A defendant must satisfy a two-prong test to show that he was denied the effective assistance of counsel. First, the defendant must demonstrate that counsel’s performance was so deficient that the attorney did not function as the “counsel” guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel’s behavior lies within the wide range of reasonable professional assistance. *Id*. The defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*.

A defendant demonstrates prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

Based on the foregoing analysis of Petitioner's underlying claims concerning his confession, there was no reasonable probability that a motion to suppress based on an alleged *Miranda* violation would have succeeded in this case, hence, Petitioner was not denied effective assistance by his trial counsel's failure to move for the suppression of his statement on this basis. *See Koras v. Robinson,* 123 F. App'x 207, 210-12 (6th Cir. 2005). Moreover, because the Michigan Court of Appeals reasonably determined that Petitioner's confession was voluntary, it was also a reasonable application for that court to determine that trial counsel was not ineffective for failing to move for the confession to be suppressed. *See Lewis v. Curtain*, 632 F. App'x 788, 795 (6th Cir. 2015). Petitioner is therefore not entitled to relief on his claims.

V. Conclusion

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met

if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court denies Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See Dell v. Straub,* 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002). However, although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

VI. ORDER

Based upon the foregoing, **IT IS ORDERED** that:

(1) the petition for writ of habeas corpus is **DENIED WITH PREJUDICE.**

(2) A certificate of appealability is **DENIED.**

(3) Petitioner will be **GRANTED** leave to appeal *in forma pauperis.*

Dated: October 8, 2026

s/Robert J. White
Robert J. White
United States District Judge